WELLS, Appellant, v. COUNTY OF WALWORTH et al, Respondents.

(249 N. W. 730.)

(File No. 7534. Opinion filed July 31, 1933.)

*Robert D. Jones,* of Milbank, and *Geo. W. Beise,* of Morris, Minn., for Appellant.

*G. T. Mickelson,* of Selby, for Respondent Walworth County.

*Smith & Mickelson,* of Selby, for Respondent Henry Seyer.

CAMPBELL, J. In April, 1920, defendants Victor Couture and Louise Couture, his wife, owning certain real estate in Walworth county, borrowed $5,000 thereon of the permanent school fund moneys of the state of South Dakota, securing the loan by a mortgage running to "The State of South Dakota c/o County Treasurer at Selby, South Dakota." Shortly thereafter defendants Couture and wife gave to the defendant Henry Seyer a second mortgage upon the same realty to secure a note of $2,700, which mortgage recited on its face that it was subsequent to the $5,000 school fund mortgage. The first mortgage coming due in June, 1925, defendants Couture applied for a renewal of the loan, which application was rejected. Thereupon the Coutures sought assistance from the plaintiff, who, through his bankers, entered into correspondence with the treasurer of Walworth county. The treasurer of Walworth county, apparently assuming that the mortgage was assignable pursuant to the provisions of chapter 223, Laws 1925, advised the plaintiff that an assignment could be made to him with the approval of the Governor, and, as a result of the correspondence, an assignment was duly prepared and executed by the chairman of the board of county commissioners of Walworth county, attested by the auditor of said county, and approved by the Governor of South Dakota, purporting to assign said mortgage to plaintiff, Wells. The assignment thus executed, together with the original note and mortgage executed by the Coutures in the sum of $5,000 and abstract of title to the premises, were delivered by the treasurer of Walworth county to the plaintiff, Wells, who paid to the treasurer therefor the full amount due upon the note and mortgage in the sum of $5,062.50. The Coutures recognized the assignment to Wells, and subsequently paid interest upon the loan to Wells, etc. Defendant Seyer also had knowledge of the assignment to Wells, and for a long period of time appears to have conceded that Wells had a lien on the realty in question by virtue thereof prior to the lien of the Seyer mortgage, which was subsequent in its inception as above set out. Under date of December

15, 1930, Seyer wrote Wells in part as follows: "Mr. Couture wants to sell me the place. If I buy it, would you let this mortgage run for one more year, if the interest is paid up on it? If so it would save me the expense of getting a new loan."

Under date of December 20 he wrote: "Regarding your letter from Dec. 16th, I don't think that I can make a deal with Mr. Couture, and if you want to foreclose it will be O K with me. If you do then I can buy this foreclosed mortgage and will save me the foreclosing."

On April 6, 1931, he wrote: "If I may bother you again I would like to ask if Vic Couture paid the interest on the $5000 mortgage you are holding against the half section of land south of Selby. If not I would like to know if you will sell this mortgage to me. I have between three and four thousand dollars due now at the bank and could send that immediately and rest in a month if no more banks fail."

Seyer appears to have conceded the priority of plaintiff's lien upon the premises at all times until he consulted his attorney with reference to the details of handling his proposed purchase of the mortgage from Wells, as indicated by his letter of April 13, 1931, to plaintiff, wherein he says in part: "I rec'd your letter and was up to see my lawyer today and he advised me not to buy the mortgage as it may cause me trouble. He says there is a question as to whether your mortgage or mine is really the first mortgage. He says he can't see where the county or state officials had a right to turn this mortgage over to you when it was due, this is the way I understood it from him, but I told him to write you himself. He thinks the best thing for both of us would be for you to start foreclosure at once. I wish you would look into this matter and let me know what you will do."

Very shortly thereafter Seyer started proceedings for foreclosure of his mortgage by advertisement. Seyer bid in the premises at foreclosure sale and the period of redemption expired. Shortly prior to the expiration of the period of redemption on the Seyer foreclosure, plaintiff instituted the present proceeding, joining Walworth county, the Coutures, and Seyer as defendants, and asking in the alternative for relief as follows: First, that the assignment of the school fund mortgage to him be declared valid and said mortgage foreclosed; second, that if the assignment be held invalid,

Walworth county be required to repay to plaintiff the amount received therefor; third, if the assignment be held invalid, that plaintiff be nevertheless permitted to enforce the mortgage lien as against all the defendants upon equitable principles of subrogation by virtue of the payment he made to Walworth county. Defendant Walworth county answered, alleging that in all the transactions wherein it was involved in connection with the matter it acted merely as an agent or agency of the state of South Dakota, and that in receiving the sum of $5,062.50 from plaintiff it acted only as the agent of the state and received the same to the use and benefit of the state, and never had, or claimed to have, any right, title, or interest in or to said money. Defendant Seyer answered separately, attacking the validity of the assignment of mortgage by Walworth county to the plaintiff, setting up his own $2,700 mortgage and the foreclosure thereof, and asking that any lien or interest of plaintiff in the premises be adjudged subsequent to Seyer's foreclosure title. Defendants Couture defaulted. The issues were brought on for trial before the court without a jury, and findings, conclusions, and judgment were in favor of the defendants Walworth county and Seyer and against the plaintiff upon all the issues, from which judgment and a denial of his application for new trial plaintiff has appealed.

It appears that appellant did not secure from Walworth county a valid assignment of mortgage under the provisions of chapter 223, Laws 1925, and probably could not have done so. The assignment was not executed by the proper authority, and appellant did not at the time of the execution thereof hold an inferior lien upon the realty involved or have any other bona fide interest therein. So far as Walworth county is concerned, we can see no legal principles upon which appellant could recover from the county the money paid to it for the assignment assuming the invalidity of such assignment. The original loan by the Coutures was a borrowing from the permanent school fund of the state of South Dakota, and not a borrowing of any moneys of Walworth county. Walworth county was never entitled to receive or retain for itself the proceeds of this mortgage, and any money that it received on the mortgage in any manner it was under legal obligation (presumably complied with) to pay over to the state. Walworth county acted in the matter merely as an agent, agency, or instrumentality of the state

and not otherwise. The precise relation between the county and state is not material to this case, and need not be here decided. Concededly, however, neither Walworth county nor the state of South Dakota can be in any manner prejudiced by permitting appellant to enforce a lien against the realty here involved. So far as the respondent Seyer is concerned, his mortgage was junior in its inception to the mortgage which appellant endeavored in good faith to purchase from Walworth county (or from the state through the instrumentality of Walworth county) for which appellant paid full value. Seyer recognized the validity of the mortgage lien in appellant's hands for a period of approximately six years. He certainly ought not to be unjustly enriched or placed in a better position merely because appellant did not succeed in securing the legally valid assignment of mortgage for which he paid and which he thought he was getting. To permit appellant to enforce the lien of this mortgage against the realty works no injustice to Seyer. The fundamental equitable principles are applicable which were adverted to by this court in Bennett v. Campbell, 48 S. D. 285, 204 N. W. 177. Seyer ought not to be gratuitously benefited merely because of appellant's error. Appellant is entitled upon principles of subrogation to be adjudged to have a valid and subsisting first lien upon the realty in question (subject, of course, to tax liens, if any) prior and superior to any rights acquired by Seyer through his second mortgage or foreclosure thereof and to a foreclosure of such lien.

The judgment and order appealed from are therefore reversed, and the cause remanded, with directions to enter conclusions and judgment upon the present findings in accordance with the views herein expressed. Appellant may tax his costs against respondent Seyer, and respondent Walworth county may tax costs against appellant.

All the Judges concur.